UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of:

Mayco Plastics, Inc.,                                   Case No. 06-52727
                                                         Chapter 11
            Debtor.                                      Hon. Phillip J. Shefferly

_____/

**OPINION OVERRULING OBJECTION TO
CONFIRMATION OF CHAPTER 11 PLAN**

I. <u>Introduction</u>

This opinion addresses an objection to confirmation of the Debtor's Chapter 11 plan of

reorganization. The objection is made by a post-petition lender that holds a claim against the Debtor

for post-petition debt incurred under § 364(c)(1) of the Bankruptcy Code. The issues in this opinion

involve the post-petition lender's rights under that section of the Code as well as its rights under a

financing order entered by the Court and its rights to object to confirmation under § 1129 of the

Bankruptcy Code. The Court held a hearing on November 30, 2007 with respect to confirmation of

the Debtor's plan. Although the Court heard a number of objections, the Debtor and the post-petition

lender requested that the Court first determine whether the post-petition lender, by reason of its

§ 364(c)(1) post-petition claim, is the holder of an administrative expense priority claim under

§ 503(b)(1), and is therefore eligible to object to confirmation of the Debtor's plan under

§ 1129(a)(9)(A) of the Bankruptcy Code. For the reasons set forth in this opinion, the Court holds

that the post-petition lender does not hold an administrative expense claim under § 503(b) of the

Bankruptcy Code and therefore cannot object to confirmation of the Debtor's plan under

§ 1129(a)(9)(A). However, the Court's holding does not prevent the post-petition lender from

objecting to confirmation of the Debtor's plan based upon other provisions of § 1129 of the

Bankruptcy Code, and based upon the rights conferred upon the post-petition lender by the financing order previously entered by the Court in this case.

## II. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and (D).

## III. Facts

On September 12, 2006, Mayco Plastics, Inc., the Debtor, filed this Chapter 11 bankruptcy case. The Debtor was a designer, developer and manufacturer of high quality injection molded and painted components and assemblies used as original equipment components for various automobile manufacturers including GM and DaimlerChrysler as well as for tier one suppliers including TRW and Lear. The Debtor's customers used the components and assemblies in the production of passenger cars, light trucks, sport utility vehicles and minivans. Like many automotive suppliers, the Debtor's business had suffered because of various factors including increases in the price of raw materials and the general decline in the domestic automotive market as a whole. At the time that the Debtor filed its Chapter 11 petition, the Debtor had insufficient funds with which to meet its payroll, purchase raw materials, and meet its other operating expenses to continue to maintain production for its customers.

On the same day that it filed its Chapter 11 petition, the Debtor also filed various first day motions, including a first day motion for entry of an interim order authorizing post-petition financing (docket entry #14). On September 14, 2006, the Court held a hearing with respect to that motion. In its motion and at the hearing, the Debtor informed the Court that it had an urgent need for post-petition financing to avoid an interruption in its production and to continue to operate. The Debtor further informed the Court that continued production was necessary to preserve the Debtor's business

-2-

enterprise to enable it to proceed either to a sale or an orderly wind down and maximize the value of

its assets for the benefit of the estate. A critical consideration was the Debtor's efforts to minimize

claims against the estate that might arise if there were to be a sudden interruption in the Debtor's

continuing production of parts for its customers. The Debtor requested that the Court enter an

interim order authorizing it to obtain post-petition financing from Citizens Bank as a post-petition

lender. The Debtor's motion explained that to induce Citizens Bank to provide post-petition

financing to the Debtor, certain of the Debtor's customers, including GM, DaimlerChrysler, TRW

and Lear ("Participating Customers"), had agreed to provide the Debtor with certain accommodations

and also to purchase from Citizens Bank subordinated participations in the post-petition loan to be

made by Citizens Bank to the Debtor. The Debtor's first day motion sought authority for the Debtor

to obtain post-petition loans from Citizens Bank and the Participating Customers with a maximum

working capital line of credit of $14,500,000 together with an out of formula advance up to

$6,500,000. Paragraph 27 of the Debtor's motion requested authority to secure the post-petition

financing by a lien on unencumbered property of the estate pursuant to § 364(c)(2) of the Bankruptcy

Code, and by a junior lien on encumbered property of the estate pursuant to § 364(c)(3) of the

Bankruptcy Code. Paragraph 30 of the Debtor's motion requested that payment of the post-petition

indebtedness also have a priority over all administrative expenses under § 364(c)(1) of the Bankruptcy

Code.

       After receiving an uncontested offer of proof from the Debtor at the hearing on September

14, 2006, and after hearing from various parties in interest, the Court determined to enter an interim

order authorizing the Debtor to obtain the requested post-petition financing from Citizens Bank. On

September 14, 2006, the Court entered an interim order authorizing post-petition financing (docket

entry #36). The interim order scheduled a final hearing with respect to the Debtor's first day motion for post-petition financing for October 19, 2006.

On September 19, 2006, a Creditors' Committee was appointed (docket entry #78). On September 26, 2006, the Committee filed an emergency motion to terminate the interim order authorizing post-petition financing (docket entry #101). On October 4, 2006, the Court held a hearing with respect to the Committee's emergency motion and the Debtor's reply to it. At the commencement of that hearing, the Committee and the Debtor informed the Court that they had resolved the Committee's emergency motion by negotiating for various modifications to the interim order with Citizens Bank. The modifications included the agreement of Citizens Bank to certain "carve outs" from the collateral securing the post-petition indebtedness, for the benefit of various professionals that would provide services in the administration of the case and also for the benefit of the general non-priority unsecured creditors represented by the Committee. The parties informed the Court that they intended to memorialize their agreement by drafting a modified interim order authorizing post-petition financing and submitting it for entry.

On October 17, 2006, the Debtor filed a stipulation (docket entry #194) signed by counsel for the Debtor, the Committee, Citizens Bank, the Participating Customers, the U.S. Trustee, and the Debtor's pre-petition lender, PNC Bank. The stipulation requested that the Court enter a modified interim order authorizing post-petition financing. On October 17, 2006, the Court entered the modified interim order authorizing post-petition financing (docket entry #196). No timely objections were filed to the modified interim order becoming a final order. As a result, no parties appeared at the final hearing on the post-petition financing that had been previously scheduled by the Court for October 19, 2006. Pursuant to paragraph 38 of the modified interim order, because no timely

objections were filed to the modified interim order, and no final hearing was necessary on October 19, 2006, the modified interim order became a final order (hereafter referred to as the "Financing Order") as of October 19, 2006.

During the same time frame that it was litigating the post-petition financing, the Debtor was moving forward on a parallel course to attempt to sell its business as a going concern. The Court conducted evidentiary hearings with respect to the Debtor's motion for authority to sell its assets and, on October 19, 2006, entered an order authorizing the Debtor to sell substantially all of its assets (docket entry #203). The sale of the Debtor's business closed on October 20, 2006. Since that date, the Debtor has continued in this Chapter 11 case to prosecute various adversary proceedings, resolve disputes with certain of its customers, dispose of remaining assets, and appears otherwise to have proceeded diligently with respect to its obligations as debtor in possession. The parties agree that there is not sufficient collateral to pay the post-petition debt under the Financing Order and that an unsecured deficiency balance remains owing.

On December 22, 2006, the Debtor filed a combined disclosure statement and plan. Various parties in interest filed objections and the Debtor sought and obtained adjournments to attempt to resolve the objections. On June 8, 2007, the Court held a hearing with respect to the Debtor's combined disclosure statement and plan and, for reasons explained on the record, determined to deny confirmation of the Debtor's plan. However, at the conclusion of that hearing, the Debtor requested that it be granted additional time to file a new combined plan and disclosure statement. The Committee, Citizens Bank, the Participating Customers and the U.S. Trustee all supported the Debtor's request. The Court granted the request and entered an order (docket entry #567) fixing a new deadline of August 10, 2007 for the Debtor to file a new combined disclosure statement and

plan.

On August 10, 2007, the Debtor timely filed a second combined disclosure statement and plan (docket entry #590). On August 20, 2007, the Court entered an order granting preliminary approval and scheduling a hearing on October 5, 2007 regarding final approval. Several objections were filed to confirmation of the plan. As a result, at the scheduled hearing the Debtor requested an adjournment to give it time to attempt to resolve the outstanding objections. There was no opposition to the Debtor's request and, therefore, the Court adjourned the confirmation hearing until November 30, 2007. At the adjourned confirmation hearing on November 30, 2007, there were still several outstanding objections that the Debtor had been unable to resolve. Citizens Bank, GM, TRW and Lear all objected to confirmation because the post-petition indebtedness incurred by the Debtor pursuant to the Financing Order has not been paid in full by the Debtor and will not be paid by the Debtor if its plan is confirmed, despite the fact that the plan provides for a distribution to the holders of administrative expense priority claims and general unsecured claims. Citizens Bank argues that it holds an administrative expense claim that will not be paid in full under the plan and, therefore, the plan cannot be confirmed under § 1129(a)(9)(A) of the Bankruptcy Code. GM, TRW and Lear, as Participating Customers holding subordinated participations in the post-petition loan made by Citizens Bank to the Debtor under the Financing Order, all concur in this objection. TRW also objects that the Debtor's plan violates both the terms of the Financing Order and various other provisions of § 1129 of the Bankruptcy Code. The Committee joins the Debtor in opposing these objections and requesting confirmation of the Debtor's plan.

Although the parties at the November 30, 2007 confirmation hearing argued all of the legal issues raised by the objections, they identified two threshold legal issues that they say are potentially

dispositive of all the issues raised by the objecting parties. As a result, the Debtor and the Committee in support of the plan, and the parties objecting to confirmation of the plan, all requested at the conclusion of the hearing that the Court first adjudicate these two threshold legal issues and adjourn the remaining issues for the confirmation hearing until after these two issues have been decided. All of the parties agreed at the hearing that the facts necessary for the Court to adjudicate these two threshold legal issues are undisputed and all of the parties stated that they were satisfied with the pleadings they had filed to date with respect to these two legal issues. Because the Court agreed with the parties that the adjudication of these threshold legal issues may be dispositive of other issues regarding confirmation of the Debtor's plan, the Court adjourned the confirmation hearing until January 11, 2008 and advised the parties that it would decide these two legal issues in advance of that date. This opinion addresses those two legal issues and reserves until the adjourned confirmation hearing all of the other legal issues raised by the objections to confirmation of the Debtor's plan and the Debtor's and the Committee's responses to those objections.

The specific legal issues addressed by this opinion are as follows:

1.  Does the unpaid balance of the post-petition debt owing to Citizens Bank and the Participating Customers under the Financing Order constitute an administrative expense claim under § 503(b)(1) of the Bankruptcy Code?

2.  Can Citizens Bank and the Participating Customers object to confirmation of the Debtor's plan under § 1129(a)(9)(A) of the Bankruptcy Code?

The resolution of these two issues requires an examination first of the applicable provisions in the Bankruptcy Code governing post-petition debts in Chapter 11 cases, and next the specific terms and provisions of the Financing Order entered on October 17, 2006.

-7-

## IV. Statutory Provisions Regarding Post-Petition Debt

There are a number of Bankruptcy Code provisions that recognize and govern the incurring of post-petition debt by a debtor in a Chapter 11 case. Section 364 is entitled "Obtaining credit" and creates the framework for a debtor to incur post-petition debt and post-petition credit. Section 364(a) applies to cases where a trustee or a debtor is authorized to operate a business of a debtor. It permits the trustee or debtor in such cases to incur unsecured debt and obtain unsecured credit in the ordinary course of business without the necessity of obtaining a specific court order. It also addresses the priority to be given to such post-petition unsecured debt or unsecured credit within the overall framework of the Bankruptcy Code. Specifically, it provides that such unsecured debt and unsecured credit shall be "allowable under § 503(b)(1) of this title as an administrative expense."[1] Section 364(b) permits the Court to authorize a debtor in possession to incur unsecured debt other than in the ordinary course of business and also permits such debt to have an administrative expense claim under § 503(b)(1), but in that circumstance there must first be a notice and hearing. In other words, if the unsecured debt is incurred in the ordinary course of the debtor's business, then § 364(a) automatically grants it an administrative expense under § 503(b)(1). But if the debt is not incurred in the ordinary course of a debtor's business, then there must first be a hearing to authorize the debtor to incur the debt and have it allowed as an administrative expense under § 503(b)(1).[2]

---

[1] Section 503(b)(1)(A) provides that the "actual, necessary costs and expenses of preserving the estate" shall, after notice and hearing, be allowed as administrative expenses.

[2] In the Sixth Circuit, an administrative expense claim will only be allowed under § 503(b)(1) after such hearing if the Court determines that the debt "arose from a transaction with the bankruptcy estate and [ ] directly and substantially benefitted the estate." Pension Benefit Guaranty Corp. v. Sunarhauserman (In re Sunarhauserman, Inc.), 126 F.3d 811, 816 (6th Cir. 1997).

The significance of allowance of an administrative expense claim appears in a number of places in the Bankruptcy Code. For example, allowance of a § 503(b)(1) administrative expense claim entitles the holder to a certain priority under § 507(a)(2). In a Chapter 7 case, that priority is important when property is distributed under § 726(a)(1). In a Chapter 13 case, that priority is important because § 1322(a)(2) mandates that a plan provide for the full payment of all claims entitled to priority under § 507. Similarly, in a Chapter 11 case, the allowance of an administrative expense claim confers certain rights relative to the confirmation of a plan of reorganization. Section 1129(a)(9)(A) requires payment in full of allowed administrative expense claims on the effective date of the plan unless the holder of a particular claim agrees to a different treatment of the claim.

However, in many instances the benefits afforded by the Bankruptcy Code to the holder of an allowed administrative expense claim under § 503(b)(1) are not sufficiently attractive to induce a party to make a loan or extend credit to a Chapter 11 debtor. Lenders frequently want greater protections than just the allowance of an administrative expense claim under § 503(b)(1). In those circumstances, §§ 364(c) and (d) provide the Court with authority to permit the Chapter 11 debtor to offer additional benefits to induce a party to make a loan or extend credit. Those provisions read as follows:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3) secured by a junior lien on property of the estate that is subject to a lien.
(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to

-9-

a lien only if –
>    (A) the trustee is unable to obtain such credit otherwise; and
>    (B) there is adequate protection of the interest of the holder of the lien
>    on the property of the estate on which such senior or equal lien is
>    proposed to be granted.
>    (2) In any hearing under this subsection, the trustee has the burden of proof on the issue
> of adequate protection.

11 U.S.C. § 364(c)-(d).

Noting the escalating nature of the benefits that can be offered to persuade a party to extend credit to a Chapter 11 debtor under §§ 364(c) and (d), the Sixth Circuit Court of Appeals summarized these provisions in Tully Construction co. v. Cannonsburg Environmental Associates, Ltd. (In re Cannonsburg Environmental Associates, Ltd.), 72 F.3d 1260 (6th Cir. 1996):

> Section 364 provides certain incentives that a trustee or debtor in possession may offer, with court approval, to induce potential lenders to undertake the risks involved in providing post-petition financing to a bankruptcy estate. These incentives include granting the lender [when necessary under statutorily defined circumstances] an administrative expense priority under § 364(b), a "super-priority" claim under § 364(c)(1), or a lien on unencumbered estate assets under § 364(c)(2) or (3), on account of the *post-petition* credit extended. Furthermore, section 364(d) provides that, under appropriate circumstances and after notice and a hearing, the court may authorize the obtaining of credit secured by a lien on encumbered property that is senior or equal to any existing lien on the property.

Id. at 1267 (internal quotation marks and citations omitted).

Implicit in this statutory framework is a recognition of certain concepts. The greater the debtor's inability to obtain the necessary post-petition financing, the greater the inducements the debtor may offer to obtain such debt. Similarly, the greater the risk undertaken by the post-petition lender, the more heightened its need becomes to obtain the additional inducements that §§ 364(c) and (d) permit the Court to authorize a debtor to offer.

-10-

## V.  The Financing Order

The Debtor's predicament in this case is not uncommon.  When it filed its Chapter 11 petition on September 12, 2006, it had a significant and immediate liquidity problem.  If it did not obtain post-petition financing, it was clear that a sudden shut down of production was imminent. (See Affidavit and Statement of Robert J. Roberts (docket entry #24).)  At the hearing on the Debtor's first day motion for interim financing on September 14, 2006, the Debtor made a detailed offer of proof regarding its immediate need for post-petition financing.  There was no contrary evidence.  It was obvious to the Court and to all parties that the magnitude of the required post-petition financing was not ordinary course of business debt that could be incurred under § 364(a).  It was equally clear that the Debtor had already negotiated with Citizens Bank and the Participating Customers regarding various terms and provisions of the post-petition financing within the framework of § 364 of the Bankruptcy Code.  The Debtor's first day motion explained in paragraphs 15 and 16 that the Debtor had made "good faith efforts" but had been unable to obtain post-petition financing that would have only an allowed administrative expense priority status under § 503(b)(1).  The Debtor asserted that the only way it could obtain post-petition financing was if it agreed that the post-petition financing would have the priority afforded by § 364(c)(1) over administrative expense claims and if the post-petition indebtedness was secured by a lien on all of the Debtor's unencumbered assets  under § 364(c)(2) and by a junior lien on all of the Debtor's encumbered assets under § 364(c)(3) of the Code.  In sum, the Debtor's motion sought authority to offer three specific enhancements to Citizens Bank and the Participating Customers under § 364(c)(1), (2) and (3) to induce them to provide the required post-petition financing.  Nowhere in the Debtor's motion does the Debtor request either that

-11-

it be authorized to grant to Citizens Bank and the Participating Customers an administrative expense claim under § 364(b) or that it be authorized to grant to Citizens Bank and the Participating Customers a priming lien on encumbered property of the estate under § 364(d) of the Bankruptcy Code. The Debtor's requested relief in its first day motion was specific and narrowly tailored to permit it to offer the benefits of §§ 364(c)(1), (2) and (3).

The Financing Order (docket entry #196) became a final order by its terms on October 19, 2006. That is the order that ultimately adjudicated the relief requested by the Debtor's first day motion and that governs the rights of Citizens Bank and the Participating Customers who together form the post-petition lender in this case. (Hereafter, except where the context requires differentiation, Citizens Bank and the Participating Customers will be collectively referred to as "Citizens Bank.") Consistent with the Debtor's first day motion, the affidavit of Mr. Roberts, and the offer of proof made at the September 14, 2006 hearing, the Financing Order contained findings of fact in paragraphs J, K and L that provided the Court with the factual basis to grant the relief requested. Those findings stated that the Debtor had an urgent need for immediate financing to continue its operations to maximize the value of its assets, and that it was unable to obtain the post-petition financing necessary to accomplish these goals by granting only an administrative expense priority claim under § 503(b)(1) and §§ 364(a) and (b) of the Bankruptcy Code. Paragraph M of the order found as a fact that the Debtor was unable to obtain the necessary post-petition financing without granting the post-petition lender a claim with priority under § 364(c)(1) over and above all administrative expenses and without granting liens to secure repayment of the post-petition debt under the provisions of §§ 364(c)(2) and (3).

Consistent with both the Debtor's first day motion and the findings set forth in the Financing

-12-

Order, the Financing Order authorized the Debtor to incur post-petition indebtedness with Citizens Bank and set forth the terms and provisions to govern the relationship between Citizens Bank and the Debtor with respect to the post-petition indebtedness. Although those provisions are detailed and extensive, there is no ambiguity in the Financing Order regarding which of the potentially available inducements under § 364 of the Bankruptcy Code the Debtor was authorized to grant to Citizens Bank. Paragraph 6.a. of the Financing Order expressly provides for the grant of a lien under § 364(c)(2) on specifically described unencumbered property of the estate and paragraph 6.b. of the Financing Order expressly provides for the grant of a junior lien on certain encumbered property of the estate pursuant to § 364(c)(3). In addition to the express grants of the liens under paragraph 6.a. and b. of the Financing Order, paragraph 9 of the Financing Order expressly grants the repayment of the post-petition indebtedness priority under § 364(c)(1) of the Bankruptcy Code.

> 9.    Subject to the Professional Fee Reserve and the Unsecured Creditors' Carveout, and except for the statutory fees of the United States Trustee accrued before the Maturity Date as provided in paragraph 31, the Postpetition Indebtedness shall have priority pursuant to § 364(c)(1) of the Code over any and all costs and expenses of administration or other priority claims in this Chapter 11 case or any subsequent Chapter 7 case, including those described in §§ 503(b) and 507(b) of the Code, and shall not be subordinated to any other security interest or lien granted under §§ 364 or 105 of the Code or otherwise.

To summarize, the Financing Order provides for very specific authority permitting the Debtor to grant to Citizens Bank the inducements enumerated in § 364(c)(1), (2) and (3) of the Bankruptcy Code. The Debtor's first day motion did not request, and the Financing Order does not provide, for authority for the Debtor to grant to Citizens Bank any of the other inducements potentially available under § 364 such as an administrative expense priority claim under § 364(b) or a priming lien under

-13-

§ 364(d).

VI. Positions of the Parties

The Debtor and the Committee first assert that the Financing Order does not expressly grant Citizens Bank an allowed administrative expense claim under § 503(b)(1) for the deficiency balance of the post-petition debt that remains unpaid after its collateral has been exhausted. Second, they argue that the express grant to Citizens Bank of a priority under § 364(c)(1) does not somehow automatically subsume within it the right to an allowed administrative expense claim under § 503(b)(1) because a § 364(c)(1) claim, in their view, is a separate and distinct "super priority" that is more in the nature of a lien or security interest than an allowed administrative expense claim. Therefore, the Debtor and the Committee conclude that Citizens Bank cannot rely upon § 1129(a)(9)(A) for its objections to confirmation of the Debtor's plan because that section only applies to allowed administrative expense claims.

Citizens Bank acknowledges that the Financing Order does not expressly state that it holds an allowed administrative expense priority claim under § 364(b) or § 503(b)(1). Nonetheless, it maintains this is not fatal to its assertion of such claim. First, it contends that the grant of a priority under § 364(c)(1) necessarily makes its claim an allowed administrative expense claim. Second, it asserts that the Financing Order contains factual findings that satisfy all of the prerequisites for the allowance of a § 503(b)(1) claim under applicable Sixth Circuit case law. Therefore, it contends that it was unnecessary for the Debtor's first day motion or for the Financing Order to specifically recite that Citizens Bank holds an allowed administrative expense claim under § 503(b)(1) of the Bankruptcy Code. Citizens Bank concludes that because it automatically holds an administrative expense claim by virtue of its § 364(c)(1) priority, Citizens Bank is entitled to have the Court deny

-14-

confirmation of the Debtor's plan under § 1129(a)(9)(A) for failure to pay the allowed administrative expense claim in full on the effective date of the plan.

## VII. Analysis

Because all parties concede that the Financing Order does not expressly allow Citizens Bank an administrative expense claim, the starting point to resolving the legal issues before the Court is the meaning of § 364(c)(1) of the Bankruptcy Code. As explained earlier in this opinion, § 364(c)(1) permits the Court to authorize the debtor to give an inducement to a potential lender to extend credit post-petition when the debtor "is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense . . . ." Specifically, § 364(c)(1) permits the Court to "authorize the obtaining of credit or the incurring of debt . . . with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title[.]" While the subsection makes it clear that the incurring of debt under § 364(c)(1) has "priority" over administrative expenses, it does not describe any of the other attributes of a § 364(c)(1) debt. It does not state, for example, when the § 364(c)(1) debt must be paid, nor does it state whether it is secured or unsecured. Its existence is defined in § 364(c)(1) solely by reference to its seniority relative to "administrative expenses of the kind specified in section 503(b) or 507(b) of this title[.]" At least that part of § 364(c)(1) is clear: payment of the § 364(c)(1) debt has "priority" over administrative expenses.

By reading further into §§ 364(c)(2) and (3), each of which specifically provides for the securing of post-petition debt by liens on property of the estate, it also quickly becomes evident that § 364(c)(1) debt, although expressly having a "priority" over administrative expenses, is unsecured debt. To state it another way, there is nothing in § 364(c)(1) that states that such debt is secured by

-15-

an interest in property of the estate, in stark contrast to debt authorized to be secured under §§ 364(c)(2) or (3) or § 364(d).  What we know then by examining the language of § 364(c)(1) is that it consists of post-petition debt with two attributes: first, it has "priority over . . . administrative expenses" and, second, it is necessarily unsecured debt because it contains no express provision authorizing the grant of a lien or interest in property to secure it.

At various times throughout the hearing on November 30, 2007, counsel for the Debtor, the Committee, Citizens Bank and the Participating Customers all referred to § 364(c)(1) debt as having "super priority."  There is no provision in the Bankruptcy Code that defines "super priority," nor is there any controlling definition of that term within Sixth Circuit case law, yet the Court acknowledges that the term frequently appears both in loan documents and case law as a short-hand or slang term to articulate the priority that § 364(c)(1) confers over administrative expense claims.  However, despite its frequent use, the term is  imprecise, and clearly means something different to the Debtor and to Citizens Bank.

When the Debtor uses the term on page 6 of  its brief in response to the objections to confirmation (docket entry #645), the Debtor describes this "super priority" as "in effect, a form of security interest or lien."  The Debtor cites three cases in support of that proposition.  The first is <u>Guy v. Grogan</u> (<u>In re Staunton Industries, Inc.</u>), 74 B.R. 501, 507 (Bankr. E.D. Mich. 1987), where the court, in dicta, referred to a "superpriority lien under § 364(c)(1)," but did not otherwise explore the meaning of § 364(c)(1).  The second case is <u>Farmworker Creditors v. Bland</u> (<u>In re Bland</u>), 308 B.R. 109 (S.D. Ga. 2003).  However, the <u>Bland</u> court did not hold that a "super priority" claim under § 364(c)(1) is a secured claim.  Instead, in describing a prior order in that case, the court observed that it "authorized [security] under § 364 (c)(1)."  <u>Id.</u> at 119.  The final case cited by the Debtor is

General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Food Service Corporation), 739 F.2d 73, 74 (2nd Cir. 1984). Much like Staunton and Bland, the Flagstaff opinion did not analyze the rights conferred by § 364(c)(1) or hold that they somehow equate to a security interest in property. The financing order in Flagstaff gave the lender "priority in payment" *and* "a first and prior lien." Id. at 74. Unfortunately, the appellate court referred to the financing order as authorizing "loans to be secured by a super-priority interest." Id.

These three cases do not support the proposition that a § 364(c)(1) claim, even if one calls it a "super priority" claim, somehow constitutes "a form of security interest or lien." As noted above, § 364(c)(2) and (3) and § 364(d) all expressly provide for the granting of a security interest or lien in property of the estate to secure claims authorized by those specific statutory provisions. They stand in sharp contrast to § 364(c)(1) which makes no mention of a security interest or lien of any kind in property of the estate. Debt incurred under § 364(c)(1) is not a "form of security interest."

Although not persuaded by the Debtor's argument that a § 364(c)(1) so-called "super priority" claim is "in effect a form of security interest or lien," the Court is equally unconvinced by Citizens Bank's position that its "super priority" § 364(c)(1) claim entitles it to an administrative expense claim by operation of law. First, Citizens Bank cannot reconcile § 364(c)(1) with § 364(b). Section 364(b) permits the Court to authorize a debtor to incur unsecured debt not in the ordinary course of business "allowable under section 503(b)(1) of this title as an administrative expense." That is the statutory provision that permits a debtor to incur unsecured debt as an administrative expense, not § 364(c)(1). The authority of a debtor to incur debt under § 364(c)(1) is expressly premised in that subsection upon the debtor's very inability to obtain unsecured credit allowable under § 503(b)(1). On its face, § 364(c)(1) applies only when the debtor cannot obtain unsecured debt

-17-

allowable as an administrative expense under § 503(b)(1). By definition, it applies only when § 364(b) does not apply. Second, § 364(c)(1) debt is granted a "priority" not just over some administrative expenses, but "over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title." A debt authorized under § 364(c)(1) is not just a kind of an administrative expense under § 503(b). It is by its nature different, indeed superior, in the sense that it must be paid with "priority" over all administrative expenses. Citizens Bank's position that § 364(c)(1) somehow necessarily also includes treatment as an administrative expense claim under § 503(b) begs the question of how such debt could ever be paid as an administrative expense claim if the very grant of statutory authority for such debt in § 364(c)(1) mandates that it be paid "with priority over any or all administrative expenses." To state it another way, the statutory requirement that a § 364(c)(1) claim must be paid before all administrative expenses are paid precludes that § 364(c)(1) claim from also, simultaneously, being itself a kind or form of an administrative expense allowable under § 503(b)(1) of the Bankruptcy Code.

Citizens Bank points out in support of its position that the Debtor's own plan and other pleadings at various times allude to the claim of Citizens Bank as an administrative expense claim. That is true. There are references in various pleadings of the Debtor that sometimes describe the claim of Citizens Bank as an administrative expense claims. These references are inaccurate and cannot and do not alter the statutory scheme of § 364(c)(1), especially where the Financing Order is unambiguous, consistent with the statutory scheme, and nowhere states that Citizens Bank holds an administrative expense claim under § 503(b)(1).

Citizens Bank offers support for its position by citing to two cases. The first case is In re Pro Set, Inc., 193 B.R. 812 (Bankr. N.D. Tex. 1996). In that case the Morgan Guaranty Trust Company

-18-

had provided the debtor with post-petition financing. In summarizing the facts, the court noted that Morgan's post-petition loans were approved by the court with a "super priority" under § 364(c)(1) and a "security interest in certain property of the [d]ebtor" under §§ 364(c)(2), (c)(3) and (d)(1). Id. at 814. The specific issue before the court was whether Morgan was required to have filed a proof of claim by a bar date set by the court. Ultimately, the court concluded that Morgan was not so required but in the course of its opinion, the court discussed the nature of Morgan's post-petition claim. Although noting that "super priority" claims under § 364(c)(1) must be "paid ahead of other administrative expenses," the court also made the following observation: "In addition, although the Code does not characterize amounts loaned pursuant to § 364(c)(1) as an administrative expense, such amounts would be administrative expenses pursuant to 11 U.S.C. § 503(b)." Id. at 815.

The In re Pro Set, Inc. opinion does not contain any explanation for the statement that § 364(c)(1) post-petition debt "would be administrative expenses" under § 503(b). Perhaps the best that can be said about this statement is that the facts that may support authorization to incur § 364(c)(1) debt may also support the allowance of a § 503(b)(1) administrative expense claim under § 364(b), but in this Court's view, that does not mean they are somehow the same. In any event, the statements in In re Pro Set, Inc. are dicta and do not persuade this Court that the holder of a § 364(c)(1) claim is automatically also the holder of an administrative expense claim.

The second case cited by Citizens Bank is In re Visionaire Corp., 290 B.R. 348 (Bankr. E.D. Mo. 2003), aff'd in part and rev'd in part, Vafer Investment Group, L.L.C. v. Case (In re Visionaire Corp.), 299 B.R. 530 (B.A.P. 8th Cir. 2003). That case involved a motion to amend a financing order to clarify the priority to be given to a § 364(c)(1) claim after the case was converted to Chapter 7. Although the issue before the court was the propriety of a motion for relief from the financing order

-19-

under Fed. R. Civ. P. 60(b), the court described § 364(c)(1) as somehow providing "an administrative expense claim that is superior to any or all *other* administrative expense claims under § 503(b)(1)." Id. at 351 (emphasis added). This statement conflates administrative expenses under § 503(b)(1) and § 364(b) with debts granted a priority over administrative expenses under § 364(c)(1). Nowhere in § 364(c)(1) does it say that a § 364(c)(1) claim has priority over "other" administrative expenses. The word "other" does not appear in the statute. Instead, it says plainly that a § 364(c)(1) claim has priority over "all administrative expenses." To the extent that the Visionaire case suggests that a § 364(c)(1) claim is also an administrative expense claim, the Court considers it to be wrongly decided.

Citizens Bank also argues (on page 5 of TRW's brief, docket entry #667) that the findings contained in paragraphs J, K and T of the Financing Order support the Court allowing it an administrative expense claim under § 503(b)(1). There is little doubt that those findings could have supported a request for the allowance of a § 503(b)(1) administrative expense claim in favor of Citizens Bank because they go to the test set forth by the Sixth Circuit Court of Appeals in In re Sunarhauserman, Inc., 126 F.3d 811, 816 (6th Cir. 1997), to determine whether to allow an administrative expense claim. But that is not what was requested in the Debtor's motion for post-petition financing nor was it awarded by the Court in the Financing Order. Citizens Bank did not ask that those findings provide the basis for an allowed administrative expense claim. Quite the contrary, the Financing Order makes it clear in paragraphs 8 and 9 that what was requested was not an administrative expense claim, but rather a claim having priority, indeed a "super priority," above all administrative expense claims under § 503(b). Paragraph 8 of the Financing Order foreclosed even the possibility that there could be any claim allowed that would even share pari passu with the claim

-20-

of Citizens Bank. Citizens Bank did not intend that its claim would ever share with administrative expense claims. It bargained for and received a claim in paragraph 9 of the Financing Order that had "priority pursuant to § 364(c)(1) of the Code over any and all costs and expenses of administration or other priority claims in this Chapter 11 case or any subsequent Chapter 7 case . . . ." The fact that there may be findings set forth in the Financing Order that could have supported a request for an allowed administrative expense claim under § 503(b)(1), if such request had been made under § 364(b), does not now provide a basis for the Court to rewrite the Financing Order after the fact to allow an administrative expense claim. This is especially true when the very order that contains these findings made it clear that Citizens Bank did not request an allowed administrative claim but instead wanted something superior in every way, that being a § 364(c)(1) claim with priority over all administrative expense claimants. The findings set forth in the Financing Order simply do not support Citizens Bank's quest for an after the fact allowance of an administrative expense claim under § 503(b)(1).

In In re Sobiech, 125 B.R. 110 (Bankr. S.D. N.Y. 1991), aff'd, Mulligan v. Sobiech, 131 B.R. 917 (S.D.N.Y. 1991), the bankruptcy court dealt with facts that are analogous to this case. Its opinion is instructive to this Court in resolving the issues before it. In Sobiech, the Chapter 11 debtor sought authority to obtain post-petition financing under § 364(c)(2) of the Bankruptcy Code. 125 B.R. at 112. The court authorized post-petition financing under that provision and permitted the debtor to borrow $500,000 from Peter Mulligan secured by a lien on specific assets of the debtor. Similar to the case at bar, the collateral that secured the post-petition debt to Mulligan under § 364(c)(2) was liquidated, but Mulligan was not paid in full. The case was converted to Chapter 7 and Mulligan requested that the court allow him to either have a "super priority" claim under

§ 364(c)(1) or an administrative expense claim under § 364(b) for the deficiency owed with respect to his debt.

Noting that the financing order provided only for a secured debt under § 364(c)(2), the court in Sobiech was unsympathetic to Mulligan's belated attempt to seek a claim under § 364(b) or (c)(1):

> In essence, Mulligan contends that the undersecured portion of his secured claim, namely the $413,332.33, is entitled to administrative expense status under either Code § 364(a), (b) or (c)(1). This appears to be a transparent attempt to "fall back" to the status of an unsecured administrative expense creditor. The express terms of Code § 364, as well as the prevailing case law in this jurisdiction, belie this argument.

Id. at 114. The court rejected the notion that a post-petition creditor who has expressly bargained for and received the benefit of particular provisions of § 364(c) or (d), could upon non-payment also somehow "fall back" to the status of a junior claim under one of the other provisions of that section. In doing so, the court quoted at length from another opinion that accurately explains the "escalating series of inducements" that § 364 provides to a debtor and their relationship to one another within that section:

> "Bankruptcy Code § 364 was structured with an escalating series of inducements which a debtor in possession may offer to attract credit in the post-petition period. First, creditors who are willing to extend unsecured credit in the ordinary course of business are offered the inducement of an administrative priority under 11 U.S.C. § 364(a). If a creditor is willing to extend unsecured credit, but not in the ordinary course of business, such credit may be authorized by the court, after notice and a hearing, pursuant to 11 U.S.C. § 364(b). If creditors are unwilling to extend unsecured credit to a debtor in possession, further inducements are offered, with court approval after notice and a hearing, including super priority administrative expenses under 11 U.S.C. § 364(c)(1); secured liens on unencumbered property pursuant to 11 U.S.C. § 364(c)(2); junior liens on encumbered property in accordance with 11 U.S.C. § 364(c)(3), or senior or equal liens pursuant to 11 U.S.C. § 364(d). The mere fact that credit was extended in a post-petition period does not mean that an administrative priority will automatically attach, notwithstanding the origin of the credit."

Id. at 114-15 (quoting Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Associates, Inc.), 87 B.R. 835, 839 (Bankr. S.D. N.Y. 1988), aff'd, 881 F.2d 6 (2nd Cir. 1989)) (emphasis added).

The Sobiech court explained that the options under § 364(a), (b), (c) and (d) may be utilized individually or in combination. But the Sobiech court held that Mulligan, having refused to lend under § 364(a) or (b), could not now "fall back" to those provisions when his bargained for rights proved inadequate, but instead was "relegated to the protection he sought and was granted under Code § 364(c)." Id. at 115.

> Although the subdivisions contained in Code § 364(c) appear in the alternative, creditors often seek the "super-priority" of Code § 364(c)(1) in conjunction with the lien protection of Code § 364(c)(2). Mulligan, having obtained protection solely pursuant to Code § 364(c)(2), cannot now assert that he obtained by operation of law an unsecured administrative expense priority under Code § 364(c)(1). The subdivisions of Code § 364(c) are in the alternative; the authorization of credit under one does not imply authorization under another absent application for such additional relief.

Id. (citations omitted).

Like Mulligan, Citizens Bank in this case extended credit under specific, bargained for terms, conditions and provisions of § 364(c)(1), (2) and (3). The authority to extend the post-petition credit under those sections does not somehow implicitly also confer upon Citizens Bank any of the benefits of § 364(a), (b) or (d). The Court agrees with the Sobiech court's statement that the subdivisions of § 364(c) are discrete, and "the authorization of credit under one does not imply authorization under another absent application for such additional relief." Id. The same thing is true with respect to the other provisions of § 364: there is no implied authorization or authorization by operation of law under any of the subparagraphs of § 364 (a), (b), (c) or (d) for relief under any other subparagraph of § 364. In this case, Citizens Bank received all of the benefits that it bargained for

-23-

and that are explicitly set forth in the Financing Order: a § 364(c)(1) claim with priority over any and all administrative expense claims and a security interest granted under § 364(c)(2) and (3) in the assets specifically described in the Financing Order. The Court concludes that Citizens Bank's "super priority" claim under § 364(c)(1) does not mean that it also holds an administrative expense claim under § 364(a) or (b) or § 503(b)(1) of the Bankruptcy Code.

The second issue for the Court to resolve is whether Citizens Bank may object to confirmation of the Debtor's plan under § 1129(a)(9)(A). That provision states as follows:

> (a) The court shall confirm a plan only if all of the following requirements are met . . .
> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that –
>> (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim[.]

The requirements of § 1129(a)(9)(A) pertain only to claims of a kind specified in § 507(a)(2) or § 507(a)(3). Having determined that Citizens Bank does not hold an allowed administrative expense claim under § 503(b) of the Bankruptcy Code, it therefore does not hold a § 507(a)(2) priority claim. (Citizens Bank does not contend that it holds a § 507(a)(3) priority claim.) Accordingly, because Citizens Bank does not hold a claim under § 507(a)(2) or (a)(3), it may not object to confirmation of the Debtor's plan based upon § 1129(a)(9)(A) of the Bankruptcy Code. To the extent it has done so, its objection is overruled.

## VIII.  Conclusion

This opinion addresses the two legal issues that the parties considered to be of a threshold

nature before proceeding to other confirmation issues. For the reasons explained, the Court has ruled in favor of the Debtor and the Committee and against Citizens Bank and the Participating Customers. However, the victory may well prove to be fleeting. While the Court unequivocally holds that Citizens Bank and the Participating Customers do not hold an administrative expense claim and are therefore not able to rely upon § 1129(a)(9)(A) for their objections to confirmation, careful inspection of the Financing Order together with the undisputed facts agreed upon by the parties at the confirmation hearing help bring into focus other looming obstacles for confirmation of the Debtor's plan. It would be a disservice to the parties to not alert them to those obstacles in advance of the upcoming confirmation hearing.

Citizens Bank and the Participating Customers indisputably hold a § 364(c)(1) claim under the Financing Order. It has priority over any and all administrative expense claims. The parties agree that there is an unpaid balance owing on it. Paragraph 5 of the Financing Order states that the "Maturity Date" for such claim is the earliest of December 15, 2006 or the dates of the occurrence of various events. It is not disputed that the maturity date of the debt has occurred and the debt is now due. That means that there is a post-petition indebtedness, fully authorized by the Court, and having a priority over and above all administrative expenses under § 364(c)(1), that has not been paid to the holder of the claim. The Debtor's plan does not provide for payment of this post-petition debt. And § 1141(d)(3) does not appear to permit the Debtor to discharge it. The Debtor bears the burden of demonstrating how its plan can be confirmed absent payment in full of this § 364(c)(1) so-called "super priority" claim and absent the consent of the holders of the claim, Citizens Bank and the Participating Customers. Although successful in litigating the two narrow legal issues addressed in this opinion, the Debtor must now navigate its plan through the remaining elements of § 1129 of the

-25-

Bankruptcy Code, the objections to confirmation by Citizens Bank and the Participating Customers, and the Debtor's reply to those objections, at the adjourned confirmation hearing on January 11, 2008.

**For publication.**

Signed on January 04, 2008

                                    /s/ Phillip J. Shefferly
                                 Phillip J. Shefferly
                                 United States Bankruptcy Judge